HISSEM *v.* GURAN ET AL.

*Motor transportation companies—Certificates of convenience and necessity—Injunction to protect rights thereunder—"Common carrier" construed—Carrying for all persons indifferently, determinative.*

1. A certificate of public convenience and necessity, granted by the Public Utilities Commission of this state to a motor transportation company as a common carrier for hire over the public highways of this state, is a valuable private property right, entitled in equity to protection by injunction from invasion, molestation or interference.

2. One who hauls for compensation the property of another and does not undertake to carry or cause to be carried for hire the property of all persons indifferently is not a common carrier under the Freeman-Collister law.

(Decided July 10, 1924.)

ERROR: Court of Appeals for Summit county.

*Messrs. Musser, Kimber & Huffman,* for plaintiff in error.

*Messrs. Whittemore & Motz,* for defendants in error.

PARDEE, J.   The parties stand in this court as they did in the court below, and will be referred to as plaintiff and defendants.

The plaintiff, having made his application in due form, was granted by the Public Utilities Commission of the state of Ohio a certificate of public convenience and necessity to operate a motor transportation company as a common carrier for hire on the route in Summit county described in his petition, under what is commonly known as the Freeman-Collister law, set forth in 110 Ohio Laws, pages 211 to 223, inclusive.

It is conceded that neither of the defendants obtained from the Public Utilities Commission of this state any authority to operate a motor transportation company as a common carrier for hire over such route or any part thereof, but since the 1st day of April, 1924, have been operating for hire motor trucks for the purpose of transporting milk over a portion of the route, under separate contracts with what they term the Summit County Milk Producers Association, a non-profit association organized under the co-operative marketing laws of Ohio.

The plaintiff having paid to the state all fees and charges required by law claims the exclusive right to operate his motor trucks for hire on and along said route, and asserts that the defendants are not entitled to operate upon the route as they are doing and claim the right to do.   The plaintiff therefore prays for a perpetual injunction restraining them from doing so.   In the lower court

the petition was dismissed, and the case is now here to reverse that judgment.

The sections of the General Code applicable to this case are the following:

Section 614-2 (110 O. L., 212):

"Any person, or persons, firm or firms, copartnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated: * * *

"When engaged in the business of carrying and transporting persons or property or both, in motor propelled vehicles of any kind whatsoever, for hire, over any public street, road or highway in this state except as hereinafter provided in Section 614-84, is a motor transportation company and as such is declared to be a common carrier."

Section 614-84 (110 O. L., 213) reads as follows:

"The term 'motor transportation company,' when used in this chapter, means every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails, used in the business of transportation of persons or property or both, as a common carrier for compensation, over any public highway in this state; * * *."

It has been suggested that the plaintiff cannot maintain his action in the form brought, for the reason that quo warranto and not injunction is the only proper remedy.

As hereinbefore indicated, it is conceded by the defendants that the plaintiff has been granted the right, privilege or franchise, as claimed, and that he has fully complied in all respects with all the

requirements of the laws of this state in relation thereto. We are therefore of the opinion that the granting of this franchise, while it is intangible and exists only in contemplation of law, is a valuable private property right, which is entitled under the laws of this state to protection from invasion, molestation or interference, the same as other private property. This conclusion is fully sustained by Sections 2016 and 2017, pages 4558-4563, of the fifth volume of Pomeroy's Equity Jurisprudence, (2 ed.), and the numerous cases cited thereunder. We are therefore unanimously of the opinion that injunction is one of the proper remedies that may be used to raise the question presented in this case.

The question therefore now arises: Do the facts in this case warrant the court in restraining the defendants from continuing to operate under their contracts with the Summit County Milk Producers Association?

The evidence shows that each of said defendants owns his own truck and is transporting and hauling milk and cream for the members of that association, and for no other person, and that neither of the defendants hauls any other property of any kind for anyone else, and does not hold himself out as offering to do so. The plaintiff therefore claims that under these facts and circumstances each of the defendants is a common carrier for hire as defined in the Freeman-Collister law.

With this claim and contention we do not agree. At the time this law was passed the term "common carrier," in this state and elsewhere, had a well-defined meaning, generally accepted and rec-

cgnized by the public, which is well stated in the case of *U. S. Express Co.* v. *Backman*, 28 Ohio St., 144, the first paragraph of the syllabus being as follows:

"A common carrier is one that undertakes for hire or reward to carry, or cause to be carried, goods for all persons indifferently who may choose to employ him, from one place to another."

The defendants do not offer to carry goods for all persons, indifferently, for hire, and there is no obligation upon them to do so.

Before the passage of this law the citizens of this state had a right to use the public highways for public or private use, for pleasure or for business, for themselves or for others, with or without compensation. They had a right to contract with their neighbors or others to haul their product or produce, or their property, or their persons, from place to place over the public highways, with or without compensation, and without let or hindrance. This right was universally used and recognized, and the farmer or the dairyman, the merchant or the manufacturer, had a right to and did contract with whomsoever he pleased to haul his property upon the public highways for hire. These acts did not make the one so employed a common carrier, and the one so employed was not so recognized, and the laws relative to common carriers were not applicable to him.

We do not believe that it was the intention of the lawmaking body to take away from the citizens of this state such a universally recognized right and to confine use of the highways merely to common carriers and to one's own use for business or pleasure, and to deny to individuals the right to

carry a neighbor to their common place of employment for compensation, to take away from the farmer the right to haul for compensation his neighbor's wheat to mill, or to deprive the dairymen, singly or collectively, of the right to hire another to take their product to the dairy.

Believing that the lawmaking body when it enacted this law had in mind the definition of a common carrier so long recognized, as hereinbefore pointed out, we are unanimously of the opinion that it did not intend to limit the use of the highways of this state as claimed by the plaintiff, and did not intend to include the defendants, or those similarly situated, within the definition of a common carrier.

Not finding any errors in the record prejudicial to the rights of plaintiff in error the judgment of the trial court is affirmed.

*Judgment affirmed.*

FUNK, P. J., and WASHBURN, J., concur.